Amy K. Anderson
Texas Bar. No. 24077064
JONES WALKER LLP
5960 Berkshire Ln, Floor 6
Dallas, Texas 75225
Tel:    (214) 459-9682
Fax:    (713) 437-1810
Email: aanderson@joneswalker.com

Mark Mintz
Texas Bar No. 24124555
811 Main Street, Suite 2900
Houston, Texas 77002
Tel:    (713) 437-1800
Fax:    (713) 437-1810
Email: mmintz@joneswalker.com

James D. Weinberger (PHV *forthcoming*)
Parker C. Eudy (PHV *forthcoming*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, NY 10036
Tel:    (212) 813-5900
Fax:    (212)813-5901
Email: jweinberger@fzlz.com
          peudy@fzlz.com

***Attorneys for McIlhenny Company***

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| STOLI GROUP (USA), LLC | Case No. 24-80146-swe11 |
| MCILHENNY COMPANY, | Adversary Proc. No. 26-8001-swe |
| *Plaintiff*, | |
| v. | |
| LOUISIANA SPIRITS, LLC AND STOLI GROUP (USA), LLC, | |
| *Defendants*. | |

## DECLARATION OF KATE NEUHAUS IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, KATE NEUHAUS, hereby declare under penalty of perjury:

1.      I am the Director of Global Marketing Communications of Plaintiff McIlhenny Company ("McIlhenny"). I submit this declaration in support of McIlhenny's Motion for a Preliminary Injunction in the above-captioned proceeding. I make this declaration based on my own personal knowledge of the facts and circumstances set forth herein, and based on my review of the books and records maintained by McIlhenny of which I am a custodian or to which I have access.

## A.      MY ROLE AT McILHENNY AND EMPLOYMENT HISTORY

2.      As Director of Global Marketing Communications of McIlhenny, I am responsible for establishing, stewarding, and protecting the brand identity for TABASCO® brand products globally. In my job, I work daily with internal and external agencies around the world to plan, craft, and execute omnichannel marketing campaigns featuring the TABASCO® brand. I am the main point of contact at the company for media requests and collaboration inquiries, including sponsorships, licensing, and other work with external companies that feature the TABASCO® brand. In relation to licensing, I evaluate opportunities, make recommendations directly to McIlhenny's senior leadership, and work on launch plans. I also lead the innovation committee, which oversees the launch of new products for McIlhenny; as a part of this function, I spearhead packaging design and other related marketing efforts. As a result of my job responsibilities, I am familiar with McIlhenny's history and operations and, among other things, the products offered by McIlhenny, its advertising, its sales, and its trademarks. I have held this role at McIlhenny since March 2021.

3.      Prior to joining McIlhenny, I worked at various food and beverage companies handling marketing, strategy, and business development, such as Drink RAMONA (a canned wine

spritz producer), Lucky Peach, and the New York City Wine & Food Festival. In my career, I have 15 cumulative years of experience in marketing, strategy, and business development. I graduated with a bachelor's degree from Tufts University.

**B.     McILHENNY, TABASCO® BRAND PEPPER
SAUCE, AND THE TABASCO® TRADE DRESS**

4.     McIlhenny is a corporation organized and existing under the laws of the State of Maine, having a principal place of business at Hwy. 329, Avery Island, Louisiana, 70513.

5.     Between 1866 and 1868, Edmund McIlhenny developed the now iconic TABASCO® brand pepper sauce ("TABASCO® Brand Pepper Sauce") in Avery Island, Louisiana. Mr. McIlhenny grew his first commercial pepper crop in 1868, and, in 1869, he made the first recorded commercial sale of TABASCO® Brand Pepper Sauce. The McIlhenny family has followed in Mr. McIlhenny's footsteps and produced TABASCO® Brand Pepper Sauce for over five generations on Avery Island. In 1907, descendants of Mr. McIlhenny incorporated McIlhenny. Today, McIlhenny remains a family-owned business, with members of the family working within the company.

6.     Since 1868, TABASCO® Brand Pepper Sauce has been manufactured on Avery Island. While the product is made using only three simple ingredients – vinegar, red pepper, and salt – its unique flavor comes from its manufacturing process. McIlhenny produces pepper seeds, which are subsequently used to grow the peppers that are used to produce TABASCO® Brand Pepper Sauce. The peppers are handpicked and mashed with a small amount of salt on the day of harvest. The pepper mash is then shipped to Avery Island, where McIlhenny places the mash in white oak barrels and stores the barrels in warehouses on Avery Island for up to three years to age the mash. After aging is complete, McIlhenny strains the mash to remove skins and seeds. The resulting liquid is then mixed with distilled vinegar and blended for up to a month, and then bottled

3

as a finished sauce. McIlhenny takes great care in the production of TABASCO® Brand Pepper

Sauce and only bottles and sells products which meet its high-quality standards.

7.     The current TABASCO® Brand Pepper Sauce bottle packaging and labeling was

first offered by McIlhenny in 1927 and has been offered in effectively the same presentation since

that time. It is comprised of the following elements: (i) a clear cylindrical bottle with a narrow

neck, (ii) a red cap, (iii) a green label covering the circumference of the narrow neck, (iv) and a

diamond-shaped label with broken concentric circles in the middle of the thicker portion of the

bottle with the words TABASCO BRAND PEPPER SAUCE McILHENNY CO. AVERY

ISLAND LA in green and red sans serif font, all as shown here:



(the "TABASCO® Trade Dress"). True and correct copies of additional images of current sizes

of TABASCO® Brand Pepper Sauce and the TABASCO® Trade Dress are attached hereto as

**Exhibit A**.

8.     McIlhenny has exclusive ownership rights to use the TABASCO® Trade Dress and

has used it for nearly one hundred years. The unique combination of elements embodied by the

TABASCO® Trade Dress is not common amongst hot sauce products, and it differentiates the

TABASCO® Trade Dress from competitors' products. Even without the words that appear on the

TABASCO® Trade Dress, consumers can readily identify McIlhenny as the source of TABASCO® Brand Pepper Sauce products based on the remaining features of the TABASCO® Trade Dress. Moreover, as an identifier of McIlhenny and the TABASCO® brand, the TABASCO® Trade Dress serves no purpose apart from distinguishing the product from those of competitors.

9.      The design of the TABASCO® Trade Dress is unique and stands out from the packaging of McIlhenny's competitors' products, which exhibit different color schemes, shapes, and designs. Therefore, hundreds of products compete with McIlhenny without copying the TABASCO® Trade Dress. Furthermore, the design of the TABASCO® Trade Dress is aesthetic rather than utilitarian, as nothing about the combination of colors and shapes in the TABASCO® Trade Dress affects the cost or quality of McIlhenny's products.

10.      Since first offering the product, McIlhenny has invested hundreds of millions of dollars into advertising and promoting TABASCO® Brand Pepper Sauce products, including by using imagery that focuses on the TABASCO® Trade Dress.

11.      Our advertising and promotion cover a wide range of media, from traditional print, which appears in restaurants and bars, as well as food and general interest publications; to television and podcasts; to digital media via online advertisements and dedicated social media accounts.

12.      Attached as **<u>Exhibit B</u>** are representative examples of our print publication and grocery store circular advertisements throughout the years for TABASCO® Brand Pepper Sauce products, including examples which use imagery that focuses on the TABASCO® Trade Dress.

13.      We have also advertised TABASCO® Brand Pepper Sauce products, including by using imagery that focuses on the TABASCO® Trade Dress, on television. Most notably, we

created and placed commercials during the 1998 and 2005 Super Bowls (our so-called "Mosquito" and "Tan Lines" commercials), which re-aired throughout the country on the major television networks. These commercials, true and correct copies of which can be viewed at https://www.tabasco.com/wp-content/uploads/2026/01/Mosquito-Commercial-1997.mp4 and https://www.tabasco.com/wp-content/uploads/2026/01/Tanlines-Commercial-2005.mp4 were viewed by hundreds of millions of people. True and correct copies of screen shots from these advertisements, both showing the TABASCO® Trade Dress, are shown here:



Mosquito Commercial



Tan Lines Commercial

6

14.     Beyond traditional print and video, McIlhenny also maintains a website for its TABASCO® products at www.tabasco.com, with a focus on TABASCO® Brand Pepper Sauce and the TABASCO® Trade Dress. A true and correct copy of representative pages from our TABASCO® website is attached as **Exhibit C**.

15.     McIlhenny also maintains and manages robust social media channels for TABASCO® Brand Pepper Sauce, including by using imagery that focuses on the TABASCO® Trade Dress, to great success.

16.     One of those accounts is on Facebook, located at https://www.facebook.com/TabascoUS/. True and correct copies of recent, representative imagery from the account – including imagery that focuses on the TABASCO® Trade Dress – are attached as **Exhibit D**. As of January 2026, our Facebook account had over 3,700,000 followers.

17.     We    also    maintain    an    account    on    TikTok, https://www.tiktok.com/@tabascobrand?lang=en.    True    and    correct    copies    of    recent, representative imagery from the account – including imagery that focuses on the TABASCO® Trade Dress – are attached as **Exhibit E**. As of January 2026, our TikTok account had over 515,700 followers.

18.     We also maintain an account on YouTube, https://youtube.com/@Tabasco_US/. True and correct copies of recent, representative imagery from the account – including imagery that focuses on the TABASCO® Trade Dress – are attached as **Exhibit F**.

19.     We also maintain an account on Instagram, https://www.instagram.com/tabasco/, using the handle @tabasco. True and correct copies of recent, representative imagery from the account – including imagery that focuses on the TABASCO® Trade Dress – are attached as **Exhibit G**. As of January 2026, our Instagram account had over 126,000 followers.

20.     TABASCO® Brand Pepper Sauce has also been prominently used by the U.S. military in its meals ready-to-eat ("MREs"); on Air Force One; at the White House for dinners with multiple U.S. presidents; by astronauts on the International Space Station; and by countless celebrities (such as Beyoncé, Martha Stewart, Priyanka Chopra Jonas, Jimmy Fallon, Rita Ora, and Dua Lipa, just to name a few) and famous chefs and bartenders online or on television. TABASCO® Brand Pepper Sauce is also a staple of numerous well-known restaurants and bars around the United States, and is commonly incorporated into popular recipes for home cooking that are promoted by celebrities and famous chefs and bartenders. The TABASCO® brand has also sponsored and participated in events for the James Beard Foundation and the Jacques Pépin Foundation, and in events such as EEEEEATSCON, Pizza City Fest, and Chain Holiday House, to name a few. A photograph from the International Space Station featuring the TABASCO® Trade Dress is shown below.



21.     TABASCO® Brand Pepper Sauce is sold online and in retail stores throughout the country and is used by restaurants and bars as the pepper sauce of choice. TABASCO® Brand

Pepper Sauce is beloved by consumers throughout the United States. Retailing at under $6 for a five-ounce bottle, TABASCO® Brand Pepper Sauce is widely affordable to consumers at all income levels. The resulting United States sales have been enormous; in the past 30 years, McIlhenny sold over 1.5 *billion* units of TABASCO® Brand Pepper Sauce in the TABASCO® Trade Dress in the United States.

22.    In the last 10 years, McIlhenny's annual U.S. sales of TABASCO® Brand Pepper Sauce exceeded $85 million each year.

23.    These sales have put TABASCO® Brand Pepper Sauce at the top of the market. From 2019 to 2020, the marketing research firm Nielsen ranked the TABASCO® brand (of which TABASCO® Brand Pepper Sauce is a major component) as the second bestselling hot sauce brand in the United States by revenue amongst hundreds of competitors. From 2021 to 2025, the TABASCO® brand ranked third in the United States.

24.    Moreover, over the years, McIlhenny has partnered with food, beverage, and other brands and companies (including alcoholic beverage brands) to offer co-branded products, including but not limited to SLIM JIM, BUGLES, JELLY BELLY, VLASIC, HEINZ, MARZETTI, RITZ, GEORGE DICKEL, and A1, as shown by way of example here:



True and correct copies of photographs of additional co-branded products are attached hereto as

**Exhibit H**.

25.      These products, the majority of which display or incorporate elements of the

TABASCO® Trade Dress thereon, are all sold under license from McIlhenny, generating

additional revenue to the company. On average, these ventures – which previously included

GEORGE DICKEL TABASCO® BARREL FINISH whiskey – have generated more than

$1,000,000 in licensing revenue annually over the past 10 years, excluding ingredient sales related

to such licensing. Having encountered these various licensed products in the marketplace, U.S.

consumers have become accustomed to seeing a wide variety of officially licensed non-hot sauce

products bearing the TABASCO® Trade Dress.

26.      Relevant to this dispute, McIlhenny's licensing partner, The Absolut Company

International AB ("Absolut Company"), a competitor of Defendants, launched this week (on

January 28, 2026) its own, pepper-flavored vodka product which utilizes elements of the

TABASCO® Trade Dress as shown here:



(the "ABSOLUT x TABASCO Brand Product"). Initial discussions with Pernod Ricard, the parent

company of Absolut Company, began in 2022. In early 2024, McIlhenny's licensing agency, IMG

Worldwide, LLC, restarted these discussions on McIlhenny's behalf, and by October 2024,

discussions about a co-branded product between McIlhenny and Absolute Company became more

frequent. By early December 2024, it was apparent to McIlhenny that the ABSOLUT x TABASCO

Brand Product was likely to come to fruition. Months later, McIlhenny and Absolut Company

formally entered into a co-branding agreement regarding the ABSOLUT x TABASCO Brand

Product, which became effective May 30, 2025.

27.    McIlhenny also licenses various TABASCO® brand trademarks, including the

TABASCO® Trade Dress, for use in connection with non-food products, ranging from lip plumper

(SEPHORA) to clothing (ZARA) and even slot machines. As a result, U.S. consumers are

accustomed to seeing a wide variety of officially licensed non-food and non-beverage products

bearing the TABASCO® Trade Dress, examples of which are shown here:





12



28.    Beyond hot sauce and co-branded and licensed products, the TABASCO® Trade Dress is the subject of a broad merchandising program, including clothing, headwear, glassware, mugs, magnets, jewelry, and keychains, to name a few products. Attached as **<u>Exhibit I</u>** are true and correct copies of photographs of exemplary products.

29.    As a result of McIlhenny's extensive marketing, promotion and sales, the TABASCO® Brand Pepper Sauce, including the TABASCO® Trade Dress, has been the subject of significant unsolicited press coverage in such publications as *The New York Times*, *Vogue*,

*Entertainment Weekly*, *NBC*, *Bon Appétit*, *Food & Wine*, and *All Recipes*. True and correct copies of a representative sample of such coverage are attached as **Exhibit J**.

30.     Moreover, TABASCO® Brand Pepper Sauce, including the TABASCO® Trade Dress, has become culturally iconic, appearing in films such as Charlie Chaplin's 1932 film *Modern Times*, James Bond films *The Man with the Golden Gun* and *The Spy Who Loved Me*, Sidney Lumet's 1974 film *Murder on the Orient Express*, 1990's *Back to the Future Part III*, which featured TABASCO® Brand Pepper Sauce in its storyline, Disney's 2009 film *The Princess and the Frog*, *The Twilight Saga: Eclipse* in 2010, and *Once Upon A Time in Hollywood* in 2019, among others. The product has also appeared in numerous television shows, including its use as an important dramatic element of the television series *Roswell*.

31.     The combination over many decades of McIlhenny's extensive advertising, marketing, and promotion of TABASCO® Brand Pepper Sauce, much of which includes and incorporates the TABASCO® Trade Dress; sales of the product, licensed co-branded products, and merchandise; and unsolicited press coverage and cultural usage, has led ordinary consumers to recognize the TABASCO® Trade Dress as associated exclusively with McIlhenny, and the TABASCO® Trade Dress represents enormous goodwill to the company. Indeed, I believe the TABASCO® trademark and brand has transformed into a household name that immediately conjures up an image of the TABASCO® Trade Dress in the minds of millions of consumers throughout the United States.

32.     The widespread renown of TABASCO® Brand Pepper Sauce and instant recognizability of the TABASCO® Trade Dress are borne out by market research used by McIlhenny in the ordinary course of its business. Based on an annual brand health survey and report prepared in February 2025 by Cleria Research – one of the largest consumer panels in the

14

world – U.S. respondents indicated an awareness score of 90% for TABASCO® Brand Pepper Sauce.

33.    In addition to the sales and promotional efforts described above, McIlhenny is the owner of numerous federal trademark registrations for the TABASCO® Trade Dress and elements thereof, including but not limited to the following:

| Reg. No. | 805670 | 805671 | 1916568 | 3015104 |
|---|---|---|---|---|
| Reg. date | March 15, 1996 | March 15, 1966 | Sept. 5, 1995 | Nov. 11, 2005 |
| Mark |  |  |  |  |
| Int. Cl. | 30 | 30 | 25 | 9 |
| Goods | Condiment- namely, pepper sauce | Condiment- namely, pepper sauce | clothing, namely T-shirts and ties | pre-recorded audio and video compact disks featuring music, recipes and antique labels for educational, amusement, cultural and artistic purposes; computer mouse pads; neon signs and decorative magnets |

(The lines shown in Reg. No. 805761 cover the red cap and green neck label which are elements of the TABASCO® Trade Dress.) True and correct copies of these registrations are attached as **Exhibit K** hereto.[1]

## C.   DEFENDANTS' CONDUCT, THE INFRINGING TRADE DRESS, AND HARM TO McILHENNY

34.   Expanding from hot sauce to flavored alcoholic beverages – which McIlhenny has already done through its partnership with GEORGE DICKEL to produce co-branded whiskey and its recent partnership with ABSOLUT to produce co-branded vodka – is nothing new and is commonplace in the food and beverage industry.

35.   On November 1, 2024, my colleague Robby McDonald, McIlhenny's Chief Information Officer, was contacted by email by Angelo Torre, President of Defendant Louisiana Spirits, LLC ("Louisiana Spirits"). Mr. Torre advised that his company was responsible for the manufacturing of STOLI brand products in the United States and was interested in a potential collaboration with the TABASCO® brand.

36.   As the head of marketing, this overture was brought to my attention and I responded on the same day with a note expressing an interest in learning about what Mr. Torre was contemplating. We held a phone call on November 8, 2024 with Mr. Torre and representatives of Defendant Stoli Group USA, LLC ("Stoli Group"), and we agreed to continue speaking. Over the next few weeks, the parties exchanged emails about the concept that Stoli Group and Louisiana Spirits had proposed, as well as draft confidentiality agreements, none of which were fully executed.

---

[1] I am advised that that the certificate for Reg. No. 3015104 includes certain goods which are no longer covered thereby. The list in the table above reflects the current coverage.

37.     As discussed above, by early December 2024, our prior discussions with Absolut Company became more frequent, and it became more likely that a collaboration with Absolut Company could come to fruition.

38.     As a result, on December 10, 2024, I advised Defendants by email that McIlhenny was exploring collaborations with other spirit brands about a potential collaboration and, as a result, was no longer interested in further discussions with Defendants. Although I did not communicate it to Defendants at that time, McIlhenny was also concerned about entering into a potential collaboration with Stoli Group because of a number of factors, including the fact that it had recently filed for bankruptcy protection.

39.     The day after that communication, on December 11, 2024, without acknowledging my email terminating discussions, Defendants sent me two mockups of the co-branded product it had contemplated by email, shown here:



We did not respond to or otherwise acknowledge this email and did not hear from Defendants again. The parties never executed any agreements, and as a result, McIlhenny did not make, and never would have made, a commitment not to develop any product with Defendants' competitors.

40.    To my shock and the shock of McIlhenny, nearly a year later, on December 16, 2025, we learned that Defendants intended to launch a pepper-flavored product, which is shown below side-by-side with the TABASCO® Trade Dress, in late-January 2026:



TABASCO® Trade Dress                          Infringing Trade Dress

(The STOLI product shown above, "Defendants' Product," and the packaging/appearance thereof, the "Infringing Trade Dress.") In its press release, dated December 15, 2025, the product was touted as the "first Stoli to be produced and bottled in Louisiana" (just like TABASCO® Brand Pepper Sauce).

41.    As is plain from its appearance, the Infringing Trade Dress copies the design of the TABASCO® Trade Dress, using the same bottle shape, color scheme, green neck label, and red cap, and it uses a broken concentric circle design in the center of the bottle with green and red sans serif font.

42.    The primary difference between the Infringing Trade Dress and the two mockups Defendants sent to me in December 2024 is the removal of the TABASCO® name and logo on the label. The design remains otherwise essentially the same.

18

43.     Press coverage of the announcement, including imagery of the Infringing Trade
Dress and messaging that the Defendants' Product was being produced in Louisiana just like
McIlhenny's TABASCO® Brand Pepper Sauce, followed in trade industry publications such as
*The Spirits Business*, *see* https://www.thespiritsbusiness.com/2025/12/stoli-turns-up-the-heat-
with-spicy-vodka-for-bloody-marys/; *BevNet*, *see* https://www.bevnet.com/pr/2025/12/16/stoli-
introduces-new-halape%C3%B1o-pepper-vodka--a-bold-flavored-spirit-designed-for-the-
perfect-spicy-bloody-mary    (Stoli     press     release);     *Beverage     Industry*,     *see*
https://www.bevindustry.com/articles/98063-stoli-halapeno-pepper; and *Global Drinks Intel*, *see*
https://drinks-intel.com/spirits/stoli-group-readies-first-us-produced-stoli-extension/.

44.     Defendants have also promoted Defendants' Product and the Infringing Trade
Dress in a December 16, 2025 post on their Instagram account, shown here:



A second screen shot of this post shows additional comments:



As can be seen in these screenshots, three different consumers noted the similarity between Defendants' Product and TABASCO® Brand Pepper Sauce, by posting the following comments: "This looks like Tabasco 🤣🤣🤣"; "Tabasco copy?"; and "As if a Stolichnaya took a Tabasco sauce" (translated from Spanish to English).

45.     A second post followed on January 18, 2026 (after McIlhenny sent Defendants a cease-and-desist letter and filed the Complaint in the above-captioned proceeding):



46.    A third post followed on January 23, 2026:



47.     Defendants' Product is not yet available for purchase by consumers in the United States, and it is unclear whether Defendants have even started manufacturing or selling the products to distributors.

48.     Defendants are already marketing Defendants' Product and the Infringing Trade Dress using the same social media platforms on which McIlhenny markets its products bearing the TABASCO® Trade Dress, such as Instagram.

49.     Defendants have also promoted the Infringing Trade Dress in advertising contexts that are highly similar to McIlhenny's past advertisements featuring the TABASCO® Trade Dress. In particular, both parties' marketing materials highlight their respective products' connection to Louisiana, and both parties target consumers of hot sauce and spirits throughout the United States. For example, like many of McIlhenny's advertisements featuring the TABASCO® Trade Dress, Defendants' advertisements feature the Infringing Trade Dress alongside Bloody Marys or other savory cocktails and red chili peppers, as shown below side-by-side with McIlhenny's advertisements.

| **Online Marketing featuring Plaintiff's TABASCO® Trade Dress** | **Online Marketing featuring Defendants' Infringing Trade Dress** |
|---|---|
|  |  |




50.    Although Defendant's Product is not yet available for sale, it will presumably be sold in the same places as Defendants' STOLI products. According to Defendants' website, Defendants currently sell nearly ten varieties of flavored vodka bearing packaging that do not copy or resemble the TABASCO® Trade Dress. Defendants' flavored vodka products are available for sale in many of the same national supermarkets, convenience stores, and liquor stores as products bearing the TABASCO® Trade Dress, which are produced, sold, and/or licensed by McIlhenny.

51.    Defendants' Product is already being marketed to the same consumers to whom McIlhenny's products bearing the TABASCO® Trade Dress are marketed, namely, purchasers of spiced products, which include individual purchasers as well as restaurant and bar operators.

52.    With respect to McIlhenny's co-branded alcohol products, including the ABSOLUT x TABASCO Brand Product, the Defendants' and McIlhenny's alcohol products are sold through the exact same trade channels to the same consumers. Both parties' products are inexpensive and competitively priced, with the ABSOLUT x TABASCO Brand Product priced at approximately $25 for a 750-milliliter bottle on Absolut Company's website, whereas Defendants' flavored vodka products are priced at under $27 for a 750-milliliter bottle on Defendants' website.

53.     Setting aside the Defendants' actual notice of the TABASCO® Trade Dress, due to the ubiquity of TABASCO® Brand Pepper Sauce and the direct discussions between Defendants and McIlhenny about a co-branded product, it is clear that Defendants were aware of the TABASCO® Trade Dress when they created the Infringing Trade Dress. Indeed, it is plain from the mockups Defendants provided to Plaintiff in December 2024 and the Defendants' Product itself that the Infringing Trade Dress copies the TABASCO® Trade Dress, as the Infringing Trade Dress is almost identical to the December 2024 mockups.

54.     The TABASCO® Trade Dress is McIlhenny's valuable intellectual property, and McIlhenny will suffer, and has already suffered, harm if Defendants are permitted to trade on McIlhenny's rights and goodwill by continuing to advertise and sell Defendants' Product using the Infringing Trade Dress.

55.     First, the Infringing Trade Dress will undoubtedly be recognized by consumers as the TABASCO® Trade Dress, or at least evocative of it. This means that consumers will identify Defendants' Product as McIlhenny's product when it is not. McIlhenny exerts an extraordinary level of control over the quality and production of TABASCO® Brand Pepper Sauce featuring the TABASCO® Trade Dress and has done so for nearly a century. We exert no control over Defendants' Product, and the fact that defendant Stoli Group is in bankruptcy will likely negatively impact consumer views of it. In this way, Defendants' Product wrests from McIlhenny control over the quality of TABASCO® Brand Pepper Sauce and the TABASCO® Trade Dress and harms McIlhenny's reputation among consumers and its hard-earned goodwill in the TABASCO® Trade Dress.

56.     Second, Defendants' Product presents an existential threat to the contemporaneous launch of the licensed ABSOLUT x TABASCO Brand Product. It goes without saying that the

simultaneous offering of two competing vodka products – which are made with, or are perceived to be made with, TABASCO® Brand Pepper Sauce – has the potential to dilute, if not derail, our co-branded licensed product by resulting in a loss of sales once Defendants' Product hits the market. In addition to the potential loss of revenue, which is incalculable at this point, Defendant's Product could severely damage McIlhenny's relationships with Absolut Company and other existing and future licensees, as well as destroy McIlhenny's ability to license the TABASCO® Trade Dress in the future.

57.     On December 17, 2025, McIlhenny sent a cease-and-desist letter to Defendants objecting to the Infringing Trade Dress. A true and correct copy of this letter is attached hereto as **Exhibit L**.

58.     While Defendants, through Mr. Torre of Louisiana Spirits, responded to our letter on December 23, 2025, they refused to agree to change the packaging of Defendants' Product.

59.     Moreover, when McIlhenny sent a courtesy copy of the Complaint in this action to Defendants to give them a final opportunity to cease use of the Infringing Trade Dress, they did not even respond to our communication.

60.     I am advised that only when informed by our counsel that this motion was going to be filed did Defendants finally respond again; when they did, on January 28, 2026, Defendants said that they would not change the Infringing Trade Dress.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of January, 2026 in New Orleans, Louisiana.

_____
Kate Neuhaus